J. Kevin Bird (3992)
Chapter 7 Trustee
384 East 720 South, Suite 201
Orem, UT 84058
(801) 426-4700

\* \* \* \* \* \* \*

IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF UTAH

\* \* \* \* \* \* \*

| | | |
|---|---|---|
| IN RE | ) | |
| BRANDON MCBRIDE | ) | Case No.  19-20019-WTT |
| ASHLEY MCBRIDE | ) | Chapter 7 |
| | ) | |
| Debtor(s) | ) | TRUSTEE'S APPLICATION TO |
| | ) | EMPLOY LICENSED REAL |
| | ) | ESTATE BROKER AND SHORT |
| | ) | SALE NEGOTIATOR |
| | ) | |

\* \* \* \* \* \* \*

TO THE HONORABLE WILLIAM T. THURMAN, UNITED STATES BANKRUPTCY JUDGE:

The Chapter 7 Trustee, J. Kevin Bird (the "Trustee"), pursuant to 11 U.S.C. §327(a), requests that the Court approve his employment of Martha Doty and Advantage Mgmt. & Real Estate Services, to perform professional real estate brokerage services for the estate; and Case by Case Short Sale Consultants, LLC ("CBC"), to complete short sale negotiations, pursuant to the terms and conditions of the Listing Agreement between the Trustee and Advantage Mgmt. & Real Estate Services, a copy

1

of which is attached hereto as Exhibit "A." In support of this application, the Trustee states:

1. <u>Procedural Status of the Case</u>. On January 2, 2019, (The "Petition Date"), the debtors BRANDON MCBRIDE and ASHLEY MCBRIDE ("Debtors") commenced this bankruptcy case by filing a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. J. Kevin Bird was appointed Chapter 7 Trustee of the above-captioned case and continues to serve in that capacity.

2. <u>The Debtor(s)' Real Property</u>. As disclosed on the Debtor(s)' Schedule A, the estate owns residential real property located at 534 South Locust Avenue, Pleasant Grove, Utah 84062 (the "Property"). Trustee believes the fair market value of the Property to be no more than $420,000. Upon information and belief, there are secured claims on the Property exceeding $425,000. The Trustee, Advantage Mgmt. & Real Estate Services and CBC believe that it is possible for CBC to negotiate with creditors holding claims secured by the Property, a carve-out agreement for the estate of no less than $15,000, thereby bringing immediate cash into the estate for the benefit of unsecured creditors.

3. <u>The Trustee's Employment of Advantage Mgmt. & Real Estate Services</u>. The Trustee wishes to employ Advantage Mgmt. & Real Estate Services as real estate broker to market and sell the Property.

4. <u>Services Provided by Advantage Mgmt. & Real Estate Services</u>. Advantage Mgmt. & Real Estate Services will provide general brokering services, including but not

limited to: listing the Property, marketing the Property, and producing necessary paperwork to effectuate sales of the Property. The terms of the employment of Advantage Mgmt. & Real Estate Services by the Trustee are set forth more specifically in the Listing Agreement. The Listing Agreement provides for Advantage Mgmt. & Real Estate Services to be paid a brokerage compensation of 6% of the sale price of the Property. The Listing Agreement further provides that in the event the buyer of the Property employs a broker, Advantage Mgmt. & Real Estate Services will split its 6% commission such that the buyer's broker will receive a commission of 2.5% on the total sale price and Advantage Mgmt. & Real Estate Services receives 3.5%. Advantage Mgmt. & Real Estate Services will compensate the short sale negotiator (see Paragraph 8 below).

5. <u>Listing the Property</u>. The Property would be listed by Martha Doty, a real estate agent with Advantage Mgmt. & Real Estate Services. Advantage Mgmt. & Real Estate Services is located at 460 East 800 North, Orem, Utah, 84059.

6. To the best of the Trustee's knowledge, information, and belief, Advantage Mgmt. & Real Estate Services and Ms. Doty have no connection with the Trustee, the Debtor, his creditors, or any other party in interest or their respective attorneys, other than any connections set out in Ms. Doty's disclosure, attached hereto as Exhibit "B."

7. <u>The Trustee's Employment of Case by Case Short Sale Consultants, LLC</u>. The Trustee also wishes to employ CBC (Hugh Rainey and Kailee Rainey) ("Rainey") to negotiate a carve-out of no less than $15,000 from the sale of the Property.

8. <u>Services Provided by CBC</u>. CBC will serve to negotiate, on behalf of the Trustee, with secured lenders on the Property, in order to obtain an agreement for a short sale with a minimum $15,000 carve-out for the estate. CBC's fees will be paid by Advantage out of its commission, at closing, and with no increase in the normal and customary fee paid to brokers (see Paragraph 4 above). CBC will not directly charge the estate or the Trustee for its services.

9. <u>Short Sale Negotiations</u>. The short sale negotiations would be negotiated by Rainey of CBC, who with their associates, have in the last several years built a proprietary system to assist Chapter 7 trustees to obtain carve-outs on real estate properties that would normally be abandoned in the course of administering a chapter 7 estate. CBC's negotiations have helped trustees around the country to collect millions of dollars for unsecured creditors. In 2014 a full service brokerage was opened in Arizona to expand CBC's services.

10. To the best of the Trustee's knowledge, information, and belief, CBC and Rainey have no connection with the Trustee, the Debtor(s), creditors, or any other party in interest or their respective attorneys, other than such connections as may be described in the Rainey declaration, attached hereto.

11. <u>Trustee's Employment of Advantage Mgmt. & Real Estate Services and CBC is in the Best Interest of the Estate</u>. The Trustee believes his employment of Advantage Real Estate and CBC is in the best interest of the estate. Advantage Real Estate will most likely be able to list and see the property more quickly, efficiently, and at a more

appropriate price than the Trustee would be able to obtain on his own. Additionally, if a short sale can be negotiated by CBC, there would be funds available for unsecured creditors, and the property would not need to be abandoned by the Trustee.

12. As of the date of filing this Application, the Trustee has not paid Advantage Mgmt. & Real Estate Services or CBC any amount in connection with this case. As indicated herein, the proposed real estate agent would only be paid a normal realtor's commission and CBC will not receive any compensation from the bankruptcy estate. Rather, CBC will be paid as an obligation of Advantage Mgmt. & Real Estate Services pursuant to their partnership agreement.

13. The Trustee has discussed the short sale proposal with the debtors and they have waived their homestead exemption.

WHEREFORE, the Trustee requests approval of his employment of Advantage Mgmt. & Real Estate Services and CBC, pursuant to 11 U.S.C. §327(a), in accordance with the terms and conditions set forth herein.


DATED: April 2, 2019

                                            /s/ J. Kevin Bird
                                          J. Kevin Bird, Trustee

**ADDENDUM NO. 1**
**TO**
**EXCLUSIVE RIGHT TO SELL LISTING AGREEMENT & AGENCY DISCLOSURE (SHORT SALE)**

**THIS IS AN ADDENDUM** to that EXCLUSIVE RIGHT TO SELL LISTING AGREEMENT & AGENCY DISCLOSURE (the "Listing Agreement") entered into on the <u>2nd day of April, 2019</u>, between <u>J. KEVIN BIRD, CH. 7 TRUSTEE FOR BRANDON AND ASHLEY MCBRIDE 19-20019</u>, (the "Seller"), and <u>Advantage Management & Real Estate Sales Division</u> (the "Company"), regarding the Property located at: <u>534 SOUTH LOCUST AVENUE, PLEASANT GROVE, UT 84062</u> (the "Property"). The following terms are hereby incorporated as part of the Listing Agreement, and to the extent these terms modify or conflict with any provisions of the Listing Agreement, these terms shall control.

1. **Acknowledgement of Short Sale Disclosure.** Seller acknowledges that Seller has received from the Company a form entitled Short Sale Disclosure (the "Short Sale Disclosure"). Seller acknowledges that Seller has read, understands, and agrees with the information contained in the Short Sale Disclosure.
2. **Third Parties Considerations.** Seller acknowledges that a Short Sale is subject to Third Party approval. Third Parties ("Third Parties") may impose conditions prior to approval of a Short Sale, including, but not limited to: (a) the Third Parties obtaining a broker price opinion or appraisal; (b) requiring Seller to demonstrate financial hardship; (c) requiring Seller to provide copies of tax returns, pay stubs, assets, and other financial information.

3. **Seller Authorizations.** Seller authorizes the Company to:
   (a) Advertise the Property as a Short Sale in all marketing materials prepared by the Company;
   (b) Advertise the Property as a Short Sale on the MLS (in accordance with the MLS rules and regulations);
   (c) Continue to advertise the Property for sale on the MLS (in accordance with the MLS rules and regulations) until approval of the Short Sale by the Third Parties;
   (d) Contact the Third Parties to obtain lien payoff amounts or other related information regarding the Short Sale;
   (e) Communicate directly with the Third Parties on Seller's behalf; and
   (f) Provide to the Third Parties such disclosures, information, and documentation requested by the Third Parties for the purpose of obtaining approval of the Short Sale.

4. **Seller Acknowledgements.** Seller acknowledges the following:
(a) If the Third Parties agree to a Short Sale, then (i) Seller may not receive any sales proceeds at Closing; (ii) Seller may be required by the Third Parties to bring some of Seller's own funds to Settlement; (iii) the Third Parties may seek a deficiency judgment against Seller or pursue other collection efforts to recover any loss incurred by the Third Parties in accepting the Short Sale; and (iv) even if the Third Parties elect not to pursue a deficiency judgment, any Short Sale discount accepted by the Third Parties may be reported to the IRS by the Third Parties as taxable income to Seller;
(b) If the Third Parties refuse to approve the Short Sale, the Property may go into foreclosure and Seller may lose all legal and financial interest in the Property;
(c) A Short Sale transaction may have a negative impact on Seller's credit rating even if the foreclosure process has not officially begun, or once begun, is not completed;
(d) Upon marketing the Property as a Short Sale, Seller may receive one or more offers for the purchase of the Property, but the Third Parties may require that only one offer be presented to the Third Parties for approval;
(e) There are other legal and financial options that Seller may want to consider with legal counsel and tax advisors rather than a Short Sale, including, but not limited to: (i) negotiating a loan modification; (ii) refinancing; (iii) bankruptcy; (iv) foreclosure; or (v) a deed in lieu of foreclosure;
(f) The Company has no control over the decision of the Third Parties to accept a Short Sale, or over the timing associated with that decision;
(g) Seller agrees to hold the Company harmless from acts or omissions of the Third Parties;
(h) If the Third Parties do not cooperate or fail to communicate with the Company, the Company may cancel this Listing Agreement by providing written notice to Seller;
(i) If the Property is conveyed to any mortgage insurer or lien holder during the term of this Listing Agreement, then in such event, Seller or the Company may cancel this Listing Agreement prior to its expiration by providing written notice to the other party;
(j) The brokerage fees referenced in this Listing Agreement are subject to the Third Parties approval;

Page 1 of 2                                     Seller's Initials _____ Date _____ Company Initials _____

**EXHIBIT A**

(k) Seller is advised by the Company to consult with legal counsel and other professionals as provided in Section 5 below.

(l) If the Listing Period referenced in Section 2 of the Listing Agreement expires prior to Third Party Approval, as defined in Section 2 of the Short Sale Addendum, Seller and the Company agree that the Listing Period shall automatically be extended until the Third Party Approval Deadline, as defined in Section 4 of the Short Sale Addendum, unless otherwise cancelled by the Company in accordance with the terms and conditions of the Listing Agreement.

**5. Advice to Consult with Legal Counsel and Other Professionals.** Seller has been advised by Seller's Agent and the Company that: (a) there may be significant legal and tax consequences, and negative credit rating impacts associated with entering into a Short Sale; (b) Seller is strongly encouraged by the Company and the Seller's Agent that before agreeing to a Short Sale, and entering into any agreement with the Third Parties, as defined in the Short Sale Disclosure, Seller should obtain and carefully evaluate professional advice from legal counsel and tax advisors to assure that Seller fully understands and accepts the legal and tax consequences of entering into an agreement and completing a Short Sale. Seller acknowledges and agrees that Seller is not relying on Seller's Agent or the Company regarding any interpretation of the legal and tax consequences of a Short Sale transaction.

**ALL OTHER TERMS** of the Listing Agreement, not modified by this ADDENDUM shall remain the same. Seller acknowledges that Seller has read, understands, and agrees to the terms of this Addendum.

_____   _____   _____   _____
(Seller Signature)                    (Date)         (Seller Signature)                    (Date)

ACCEPTED by the Company:

by: _____   _____
    (Signature of Authorized Seller's Agent or Broker)   (Date)

**This form is COPYRIGHTED by the UTAH ASSOCIATION OF REALTORS® for use solely by its members. Any unauthorized use, modification, copying or distribution without written consent is prohibited. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION OF THIS FORM IN ANY SPECIFIC TRANSACTION. IF YOU DESIRE SPECIFIC LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.**

**COPYRIGHT© UTAH ASSOCIATION OF REALTORS® - 3.19.10 - ALL RIGHTS RESERVED**                    UAR FORM 39

# EXCLUSIVE RIGHT TO SELL LISTING AGREEMENT
# & AGENCY DISCLOSURE

### THIS IS A LEGALLY BINDING AGREEMENT - READ CAREFULLY BEFORE SIGNING
### DESIGNATED AGENCY BROKERAGE

**THIS EXCLUSIVE RIGHT TO SELL LISTING AGREEMENT & AGENCY DISCLOSURE** ("Listing Agreement") is entered into by and between <u>Advantage Management & Real Estate Sales Division</u> (the "Company") and <u>J. KEVIN BIRD, CH. 7 TRUSTEE FOR BRANDON AND ASHLEY MCBRIDE 19-20019</u> (the "Seller").

1. **TERM OF LISTING.** The Seller hereby grants to the Company, including <u>Martha Doty</u> (the "Seller's Agent") as the authorized agent for the Company starting on the Effective Date as defined in section 17 below, and ending at 5:00 P.M. (Mountain Time) on the <u>1</u> day of <u>MAY</u>, 20<u>20</u> (the "Listing Period"), the exclusive right to sell, lease, or exchange real property owned by the Seller, described as: <u>534 SOUTH LOCUST AVENUE, PLEASANT GROVE, UT 84062</u> (the "Property"), at the listing price and terms stated on the attached property data form (the "Data Form"), or at such other price and terms to which the Seller may agree in writing.

2. **BROKERAGE FEE.** If, during the Listing Period, the Company, the Seller's Agent, the Seller, another real estate agent, or anyone else locates a party who is ready, willing and able to buy, lease or exchange (collectively "acquire") the Property, or any part thereof, at the listing price and terms stated on the Data Form, or any other price and terms to which the Seller may agree in writing, the Seller agrees to pay to the Company a brokerage fee in the amount of $_____ or <u>6</u> % of such acquisition price (the "Brokerage Fee"). The Brokerage Fee, unless otherwise agreed in writing by the Seller and the Company, shall be due and payable from the Seller's proceeds on: (a) If a purchase, the date of recording of the Closing documents for the acquisition of the Property; (b) If a lease, the effective date of the lease; and (c) if an option, the date the option agreement is signed. If within the Listing Period, or any extension of the Listing Period, the Property is withdrawn from sale, transferred, conveyed, leased, rented, or made unmarketable by a voluntary act of Seller, without the written consent of the Company; or if the sale is prevented by default of the Seller, the Brokerage Fee shall be immediately due and payable to the Company. The Company is authorized to share the Brokerage Fee with another brokerage participating in any transaction arising out of this Listing Agreement.

3. **PROTECTION PERIOD.** If within <u>2</u> months after the termination or expiration of this Listing Agreement, the Property is acquired by any party to whom the Property was offered or shown by the Company, the Seller's Agent, the Seller, or another real estate agent during the Listing Period, or any extension of the Listing Period, the Seller agrees to pay to the Company the Brokerage Fee stated in Section 2, unless the Seller is obligated to pay a Brokerage Fee on such acquisition to another brokerage based on another valid listing agreement entered into after the expiration or termination date of this Listing Agreement.

4. **SELLER WARRANTIES/DISCLOSURES.** The Seller warrants to the Company that the individuals or entity listed above as the "Seller" represents all of the record owners of the Property. The Seller warrants that Seller has marketable title and an established right to sell, lease or exchange the Property. The Seller agrees to execute the necessary documents of conveyance. The Seller agrees to furnish buyer with good and marketable title, and to pay at Settlement, for a policy of title insurance in accordance with the terms of any real estate purchase contract entered into between buyer and Seller. The Seller agrees to fully inform the Seller's Agent regarding the Seller's knowledge of the condition of the Property. Upon signing of this Listing Agreement, the Seller agrees to personally complete and sign a Seller's Property Condition Disclosure form and Wire Fraud Alert Disclosure. The Seller agrees to indemnify and hold harmless the Seller's Agent and the Company against any claims that may arise from: (a) The Seller providing incorrect or inaccurate information regarding the Property; (b)The Seller failing to disclose material information regarding the Property, including, but not limited to, the condition of all appliances; the condition of heating, plumbing, and electrical fixtures and equipment; sewer problems; moisture or other problems in the roof or foundation; the availability and location of utilities; and the location of property lines; and (c) Any injuries resulting from any unsafe conditions within the Property.

5. **AGENCY RELATIONSHIPS.**

    **5.1 Duties of a Seller's Agent.** By signing this Listing Agreement, the Seller designates the Seller's Agent and the Principal/Branch Broker for the Company (the "Broker"), as agents for the Seller to locate a buyer for the Property. The Seller authorizes the Seller's Agent or the Broker to appoint another agent in the Company to also represent the Seller in the event the Seller's Agent or the Broker will be unavailable to service the Seller. As agents for the Seller, they have fiduciary duties to the Seller that include loyalty, obedience, full disclosure, confidentiality, reasonable care, and any other duties required by law.

    **5.2 Duties of a Limited Agent.** The Seller understands that the Seller's Agent and the Broker may now, or in the future, be agents for a buyer who may wish to negotiate a purchase of the Property. Then the Seller's Agent and the Broker may be acting as Limited Agents - representing both the Seller and buyer at the same time. A Limited Agent has fiduciary duties to both the Seller and the buyer as required by law. However, some of those duties are "limited" because the agent cannot provide to both parties undivided loyalty, confidentiality and disclosure. For this reason, the Limited Agent is bound by a further duty of neutrality. Being neutral, the Limited Agent may not disclose to either party information likely to weaken the bargaining position of the other – for example, the highest price the buyer will offer, or the lowest price the Seller will accept. However, the Limited Agent will be required to disclose information given to the agent in confidence by the other party if failure to disclose such information would be a material misrepresentation regarding the Property or regarding the ability of the parties to fulfill their obligations. The Seller is advised that neither the Seller nor the buyer is required to accept a limited agency situation in the Company, and each party is entitled to be represented by its own agent. In the event a limited agency situation arises, the Seller's Agent and the Broker, as applicable, may only act as Limited Agents based upon a separate Limited Agency Consent Agreement signed by the Seller and buyer.

6. **PROFESSIONAL ADVICE.** The Company and the Seller's Agent are trained in the marketing of real estate. Neither the Company nor its agents are trained or licensed to provide the Seller or any prospective buyer with legal or tax advice, or with technical advice regarding the physical condition of the Property. The Seller is advised not to rely on the Company, or any agents of the Company, for a determination regarding the physical or legal condition of the Property. If the Seller desires advice regarding: (a) Past or present compliance with zoning and building code requirements; (b) Legal or tax matters; (c) The physical condition of the Property; (d) This Listing Agreement; or (e) Any transaction for the acquisition of the Property, the Seller's Agent and the Company strongly recommend that the Seller obtain such independent advice. If the Seller fails to do so, the Seller is acting contrary to the advice of the Company. Any recommendations for third-party services made by the Company or the Seller's Agent do not guarantee the Seller's satisfaction in the use of those third-party services and should not be seen as a warranty of any kind as to the level of service that will be provided by the third parties. The Seller is advised that it is up to the Seller in the Seller's sole discretion to choose third-party services that meet the needs of the Seller and not to rely on any recommendations given by the Company or the Seller's Agent.

7. **DISPUTE RESOLUTION.** The parties agree that any dispute, arising prior to or after a Closing, related to this Listing Agreement shall first be submitted to mediation through a mediation provider mutually agreed upon by the Seller and the Company. Each party agrees to bear its own costs of mediation. If mediation fails, any other remedies available at law shall apply.

8. **ATTORNEY FEES/GOVERNING LAW.** Except as provided in Section 7, in case of the employment of an attorney in any matter arising out of this Listing Agreement, the prevailing party shall be entitled to receive from the other party all costs and attorney fees, whether the matter is resolved through court action or otherwise. If, through no fault of the Company, any litigation arises out of the Seller's employment of the Company under this Listing Agreement (whether before or after a Closing), the Seller agrees to indemnify the Company and the Seller's Agent from all costs and attorney fees incurred by the Company and/or the Seller's Agent in pursuing and/or defending such action. This Listing Agreement shall be governed and construed in accordance with the laws of the State of Utah.

9. **ADVERTISING/SELLER AUTHORIZATIONS.** The Seller authorizes the Company and the Seller's Agent to advertise the Property for sale through any printed and/or electronic media deemed necessary and appropriate by the Seller's Agent and the Company, including, but not limited to, each Multiple Listing Service (MLS) in which the Company participates. The Seller agrees that any advertising the Seller intends to conduct, including print and/or electronic media, shall first be approved in writing by the Seller's Agent. The Seller further agrees that the Seller's Agent and the Company are authorized to:

    (a) Disclose to the MLS after Closing, the final terms and sales price for the Property consistent with the requirements of the MLS;
    (b) Disclose to the MLS the square footage of the Property as obtained from (check applicable box):
        [X] County Records  [ ] Appraisal  [ ] Building Plans  [ ] Other (explain)_____

(c) Obtain financial information from any lender or other party holding a lien or interest on the Property;
(d) Have keys to the Property, if applicable;
(e) Have an MLS or local board of Realtors® approved/endorsed security key-box installed on the Property. If the Seller authorizes the Broker, or Seller's Agent, to install a non-MLS or local board of Realtors® approved/endorsed security key-box on the Property, Seller acknowledges that it may not provide the same level of security as the MLS or local board of Realtors® approved/endorsed security key-box;
(f) Hold Open-Houses at the Property;
(g) Place for sale, sold, or other similar signs ("Signs") on the Property (i.e., the only Signs on the Property shall be that of the Company);
(h) Order a Preliminary Title Report on the Property;
(i) Order a Home Warranty Plan, if applicable;
(j) Communicate with the Seller for the purpose of soliciting real estate related goods and services during and after the term of this Listing Agreement; and
(k) Place the Earnest Money Deposit into an interest-bearing trust account with interest paid to the Utah Association of Realtors® Housing Opportunity Fund (UARHOF) to assist in creating affordable housing throughout the state.

**10. PERSONAL PROPERTY.** The Seller acknowledges that the Company has discussed with the Seller the safeguarding of personal property and valuables located within the Property. The Seller acknowledges that the Company is not an insurer against the loss of or damage to personal property. The Seller agrees to hold the Company harmless from any loss or damage that might result from any authorizations given in Section 9.

**11. ATTACHMENT.** Seller's Property Condition Disclosure form, the Data Form and Wire Fraud Alert Disclosure are incorporated into this Listing Agreement by this reference. There **[X] ARE [ ] ARE NOT** additional terms contained in an Addendum attached to this Listing Agreement. If an Addendum is attached, the terms of that Addendum are incorporated into this Listing Agreement by this reference.

**12. FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT ("FIRPTA").** The sale or other disposition of a U.S. real property interest by a foreign person is subject to income tax withholding under FIRPTA. A "foreign person" may include a non-resident alien individual, foreign corporation, foreign partnership, foreign trust and foreign estate. Seller warrants and represents to the Company and to the Seller's Agent, that Seller **[ ] IS [X] IS NOT** a "foreign person" as defined by the Internal Revenue Code and its associated regulations. If Seller is not a foreign person, Seller agrees, upon request, to deliver a certification to Buyer at closing, stating that Seller is not a foreign person. This certification shall be in the form then required by FIRPTA. If FIRPTA applies to you as Seller, you are advised that the Buyer or other qualified substitute may be legally required to withhold a substantial percentage of the total purchase price for the Property at closing and remit that amount to the IRS. If Seller is a foreign person as defined above, and Seller does not have a US Taxpayer Identification number, Seller agrees to prepare to apply for a US Taxpayer Identification number.

**13. EQUAL HOUSING OPPORTUNITY.** The Seller and the Company shall comply with Federal, State, and local fair housing laws.

**14. ELECTRONIC TRANSMISSION & COUNTERPARTS.** Electronic transmission (including email and fax) of a signed copy of this Listing Agreement and any addenda, and the retransmission of any signed electronic transmission, shall be the same as delivery of an original. This Listing Agreement and any addenda may be executed in counterparts.

**15. DUE-ON-SALE.** Certain types of transactions may trigger what is commonly referred to as a "due-on-sale" clause. A "due-on-sale" clause typically states that the Seller's lender or mortgagee may call the loan due and payable in full if the Seller participates in certain types of transactions. These types of transactions may include, but are not limited to, transactions where: (a) The sale of the property does not result in the underlying debt being paid in full; (b) The parties enter into a seller-financed transaction; (c) A lease option agreement is entered into; or (d) Any other unauthorized transfer of title to the Property has occurred without the lender's consent. The Seller understands that if any underlying encumbrances or mortgages on the Property contain a "due-on-sale clause," and the "due-on-sale" clause is triggered, the lender may call the entire unpaid balance of the loan immediately due.

**16. ENTIRE AGREEMENT.** This Listing Agreement, including the Seller's Property Condition Disclosure form, the Data Form, the Wire Fraud Alert Disclosure, and any additional addendum, contain the entire agreement between the parties relating to the subject matter of this Listing Agreement. This Listing Agreement may not be modified or amended except in writing signed by the parties hereto.

**17. EFFECTIVE DATE.** This Listing Agreement is entered into and is effective as of the date: (a) The Seller and the authorized Seller's Agent or Broker have signed this Listing Agreement; and (b) The authorized Seller's Agent or Broker has received a mutually signed copy of this Listing Agreement (the "Effective Date").

**THE UNDERSIGNED** hereby agree to the terms of this Listing Agreement.

_____       _____       _____
(Seller's Signature)                      (Address/Phone)                                                         (Date)

_____       _____       _____
(Seller's Signature)                      (Address/Phone)                                                         (Date)

ACCEPTED by the Company

by: _____                            _____
    (Signature of Authorized Seller's Agent or Broker)                                           (Date)

This form is COPYRIGHTED by the UTAH ASSOCIATION OF REALTORS® for use solely by its members. Any unauthorized use, modification, copying or distribution without written consent is prohibited. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION OF THIS FORM IN ANY SPECIFIC TRANSACTION. IF YOU DESIRE SPECIFIC LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

COPYRIGHT© UTAH ASSOCIATION OF REALTORS® – 1995 – REVISED 10.29.2018 – ALL RIGHTS RESERVED          UAR FORM 8

J. Kevin Bird (3992)
Chapter 7 Trustee
384 East 720 South, Suite 201
Orem, UT 84058
(801) 426-4700

\* \* \* \* \* \* \*

IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF UTAH

\* \* \* \* \* \* \*

| | |
|---|---|
| IN RE ) | |
| ) | Case No. 19-20019-WTT |
| BRANDON MCBRIDE ) | Chapter 7 |
| ASHLEY MCBRIDE ) | |
| ) | DECLARATION OF MARTHA |
| Debtor(s) ) | DOTY OF ADVANTAGE MGMT. & |
| ) | REAL ESTATE SERVICES |
| ) | PURSUANT TO BANKRUPTCY |
| ) | RULE 2014 |

\* \* \* \* \* \* \*

I, MARTHA DOTY, declare as follows:

1. I am a licensed realtor and agent of Advantage Mgmt. & Real Estate Services ("Advantage"), a licensed real estate brokerage in the State of Utah.

2. I am familiar with the Trustee's Application and the property described therein, and believe that I am qualified to represent the Trustee and the estate in connection with the marketing of said property. Advantage has agreed to accept employment on the terms and conditions set forth in the Trustee's Application.



EXHIBIT B

3. I have been informed and understand that the property is being sold "as-is – where-is" with all faults and conditions then existing at the property, and therefore understand that: (a) the Trustee is not making any representations, warranties, either express or implied, as to the condition of the property, uses (prior, present and future), or otherwise; (b) the Trustee shall not provide the buyer with any reports as to the use or condition of the Property; (c) the Trustee shall not provide the buyer with any warranty protection plan or with any building permits or plans; and (d) the Trustee is selling the Property solely in his capacity as the Chapter 7 Trustee of the Debtors' Estate.

4. If the Court approves the Trustee's employment of Advantage as real estate broker in this case and of Case by Case Short Sale Consultants, LLC ("CBC") as short sale negotiator in this case, the terms and arrangements for employing and compensating CBC are such that Advantage will compensate CBC out of its 6% commission. No charges will be made directly to the estate or the Trustee for the services of CBC.

5. Advantage Mgmt. & Real Estate Services is a disinterested person within the meaning of 11 U.S.C. §101(14).

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 1st day of April, 2019.

                                                /s/ Martha Doty
                                                MARTHA DOTY

J. Kevin Bird (3992)
Chapter 7 Trustee
384 East 720 South, Suite 201
Orem, UT 84058
(801) 426-4700

\* \* \* \* \* \* \*

IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF UTAH

\* \* \* \* \* \* \*

| | |
|---|---|
| IN RE ) | |
| ) | Case No. 19-20019-WTT |
| BRANDON MCBRIDE ) | Chapter 7 |
| ASHLEY MCBRIDE ) | |
| ) | DECLARATION OF HUGH AND |
| Debtor(s) ) | KAILEE RAINEY OF CASE BY |
| ) | CASE SHORT SALE |
| ) | CONSULTANTS PURSUANT TO |
| ) | BANKRUPTCY RULE 2014 |

\* \* \* \* \* \* \*

Hugh Rainey ("**Rainey**") of Case by Case Short Sale Consultants LLC ("**CBC**") in connection with the *Trustee's Application to Employ A Licensed Real Estate Broker and Short Sale Negotiator* (the "**Application**"), states:

1. To the best of the undersigned's knowledge, information, and belief, and after making reasonable inquiry, neither Rainey nor CBC has any connection with the Trustee, the Debtors, the Debtors' creditors, nor any other party in interest in

this case, nor their respective attorneys and accountants, the United States Trustee, nor any person employed in the office of the United States Trustee, except as follows:

(a) CBC may have provided other real estate brokerage services in the past to the Trustee, the Debtors, and/or the Debtors' creditors;

(b) CBC or its employees may subscribe to telephone and other utility services, and may purchase other goods and/or services, from vendors of the Debtors and/or the Trustee.

2. If the Court approves the Trustee's employment of Advantage Mgmt & Real Estate Services ("Advantage") as real estate brokers in this case and of CBC as short sale negotiators in this case, the terms and arrangements for employing and compensating CBC are such that Advantage will compensate CBC out of its 6% commission. No charges will be made directly to the estate or the trustee for the services of CBC.

3. Within one year prior to the commencement of this bankruptcy case, the Trustee has not paid CBC any amounts in connection with this case.

4. CBC has not shared or agreed to share with any other person or entity, other than with members or regular associates or employees of CBC, any compensation paid or to be paid by the Trustee in or in connection with this bankruptcy case.

The undersigned verifies under penalty of perjury that the above is true and correct.

DATED this 1st day of April, 2019.

                                          Case by Case Short Sale Consultants, LLC

                                          By:  /s/ Hugh Rainey
                                                  Hugh Rainey
                                                  c/o Rainey Real Estate/Case by Case
                                                  9055 E. Catalina Hwy., Ste. 3201
                                                  Tucson, AZ 85749
                                                  520.329.4800

                                        *Proposed short sale negotiator for Chapter 7 Trustee*

# CERTIFICATE OF SERVICE—BY NOTICE OF ELECTRONIC FILING (CM/ECF)

I hereby certify that on April 4, 2019, I electronically filed the foregoing Trustee's Application to Employ Licensed Real Estate Broker and Short Sale Negotiator, with the United States Bankruptcy Court for the District of Utah by using the CM/ECF system. I further certify that the parties of record in this case, as identified below, are registered CM/ECF users and will be served through the CM/ECF system.

- Marlon L. Bates    marlon@scalleyreading.net, jackie@scalleyreading.net
- J. Kevin Bird tr    jkevinbird@birdfugal.com, kbird@ecf.epiqsystems.com;kbtrustee@aol.com;melanie@birdfugal.com;jkb@trustesolutions.net
- Jarred A. Henline    jarred@henline-law.com, henlinelaw@gmail.com;henlinejr75061@notify.bestcase.com
- United States Trustee    USTPRegion19.SK.ECF@usdoj.gov

# CERTIFICATE OF SERVICE—MAIL

I hereby certify that on April 4, 2019, I caused to be served a true and correct copy of the foregoing Trustee's Application to Employ Licensed Real Estate Broker and Short Sale Negotiator, as follows:

**Mail Service:** By regular first class United States mail, postage fully pre-paid, addressed to:

BRANDON MCBRIDE
ASHLEY MCBRIDE
534 SOUTH LOCUST AVE
PLEASANT GROVE, UT 84062

/s/ Melanie Valderrama